UNITED STATES DISTRICT COURT
NONTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                              :
OPHELIA FRY,                                  :    CASE NO. 1:07-cv-2403
                                              :
        Plaintiff,                           :
                                              :
vs.                                           :    OPINION & ORDER
                                              :    [Resolving Doc. No. 29]
MANSFIELD CITY SCHOOL,                        :
                                              :
        Defendant.                           :
                                              :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this opinion and order, the Court considers the Defendant's motion for summary judgment in this age-discrimination case. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's motion.

**I. Background**

The Plaintiff, Ophelia Fry, is a 64 year old woman who was a teacher with the Mansfield School District. [Doc. 31, Ex 4 at 8]. She taught sixth grade at Malibar Middle School for the 2005-2006 school year. [Doc. 31, Ex 4 at 8]. The Plaintiff testified that since the arrival of a new assistant principal, Taylor Gerhart, her working environment worsened. She testified that Taylor Gerhart repeatedly said to her they needed "young blood" in Malibar Middle School, and if other teachers were around, he would ignore the Plaintiff completely. [Doc. 31, Ex. 4 at 32-33]. The Plaintiff estimated that Gerhart used the term "young blood" approximately once a week. [Doc. 31, Ex. 4 at 48]. He also criticized her job performance and gave her bad evaluations in 2005 and 2006.

-1-

Case No. 1:07-cv-2403
Gwin, J.

[Doc. 31, Ex 4 at 31-33].

Plaintiff Fry also testified that the principal, Joanne Hipshir, made age related remarks. In the 2004-2005 school year, the principal stated that the Plaintiff should no longer lead the National Honor Society alone, stating they needed young blood. [Doc. 31, Ex. 4 at 40]. Hipshir stated that Mr. Grassell, in his late 20s, would lead the society with her. [Doc. 31, Ex. 4 at 41]. Thereafter, the Plaintiff had to split the stipend she had been receiving to lead the group with Grassell. [Doc. 31, Ex. 4 at 41]. Further, Hipshir did not allow the Plaintiff to attend the in-service training that other teachers attended. [Doc. 31, Ex. 4 at 44].

The Plaintiff alleged that three other teachers were harassed into retirement, but could not provide any specific details about their alleged harassment. [Doc. 31, Ex. 4 at 55]. None of these teachers filed any lawsuits.

In March of 2006, the Plaintiff administered the Ohio Achievement test to her sixth grade class at Malibar Middle School. Some of the children from her class alleged the Plaintiff helped students cheat on the test. [Doc. 31, Ex. 4 at 73]. On April 14, 2006, the principal notified the Plaintiff that she was being placed on leave, pending the outcome of the investigation. [Doc. 31, Ex. 4 at 104]. The principal notified Betsy Alexander, Mansfield City School District's Testing Coordinator, regarding the possible improprieties. [Doc. 29, Ex. 3 at 1]. Alexander investigated and determined that improper helping only occurred in the Plaintiff's class, and that the Plaintiff had assisted students in answering questions. [Doc. 29, Ex. 3 at 1]. The investigation resulted in the invalidation of the test scores of the students in the Plaintiff's class. [Doc. 29, Ex. 3 at 2].

As a result of this investigation, Union Referee Tom Elkin recommend that Mansfield City School terminate the Plaintiff's employment. [Doc. 29, Ex. 2 at 1]. The Board of Education accepted

Case No. 1:07-cv-2403
Gwin, J.

this recommendation and terminated the Plaintiff's employment. [Doc. 31, Ex. 4 at 82-83].

The Plaintiff sues Mansfield City School under the federal and Ohio anti-age discrimination laws and for intentional infliction of emotional distress.

## II. Legal Standard

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. Waters v. City of Morristown, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. Daughenbaugh v. City of Tiffin, 150 F.3d 594, 597 (6th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The moving party, however, is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." Id. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. Id. at 586. Nor can the nonmoving party "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e).

Case No. 1:07-cv-2403
Gwin, J.

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Nat. Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)); *see also Celotex,* 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

### III. Analysis

*A. Age Discrimination Claims*

The Plaintiff brings age discrimination claims under both federal and Ohio law. Age discrimination claims brought under state law are generally analyzed under the same framework as claims raised under the federal Age Discrimination in Employment Act (ADEA). *See Minadeo v. ICI Paints,* 398 F.3d 751, 763 (6th Cir. 2005). A plaintiff can establish a prima facie case of age discrimination either by providing direct evidence of discrimination or by proving a prima facie case under the *McDonnell Douglas* paradigm. *Id.*

1. Direct Evidence

Direct evidence "proves the existence of a fact without requiring any inferences." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 523 (6th Cir. 2007) (internal citation omitted). The Sixth Circuit requires "some degree of connection between the comments and the relevant decision if the

-4-

Case No. 1:07-cv-2403
Gwin, J.

comments are to be considered even as *circumstantial* evidence of discrimination." *Id.* at 525.

Similarly, the Ohio Supreme Court has held:

> There must be a link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination to establish a violation of the statute. . . Therefore, we hold that, in a cause of action for age discrimination under R.C. 4112.02 or 4112.14, when relying upon the direct evidence standard . . . an employee must prove a causal link or nexus between evidence of a discriminatory statement or conduct and the prohibited act of discrimination to establish a violation.

*Byrnes v. LCI Comm. Holdings Co.,* 672 N.E.2d 145, 149 (Ohio 1996). Ohio courts interpret this direct evidence standard "to mean that the statement must be a statement by a decisionmaker. 'There is a vital difference between comments which demonstrate a discriminatory animus in the decisional process and stray remarks made by nondecisionmakers.'" *Coburn v. Rockwell Automation, Inc.,* 238 Fed. Appx. 112, 118 (6th Cir. 2007) (citing *Molnar v. Klammer,* 2005 WL 3528870, at *4 (Ohio Ct. App. 2005)).

a. The Plaintiff's Termination

The Plaintiff alleges that Hipshir and Gerhart's comments about needing young blood are direct evidence of age discrimination. These comments, other than the comment made in conjunction with the National Honors Society, have no connection with the decision to terminate the Plaintiff's employment. *See Blair,* 505 F.3d at 523. The Plaintiff puts forth no evidence that either the principal or the assistant principal had the authority to discharge the Plaintiff, as such these remarks cannot demonstrate direct evidence. *See DiCarlo v. Potter*, 358 F.3d 408, 416 (6th Cir. 2004). Moreover, the Plaintiff puts forth no evidence that they were involved in the school board's decision-making process. *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003)("comments made by individuals who are not involved in the decision-making process regarding the plaintiff's employment

-5-

Case No. 1:07-cv-2403
Gwin, J.

do not constitute direct evidence of discrimination"). Therefore, these comments cannot demonstrate direct evidence that the Plaintiff's discharge was based on age-based animus.

b. The Plaintiff's Work Assignments

The Plaintiff also claims that she suffered modified work assignments due to her age. Specifically, she claims that she lost sole responsibility for the National Honors Society, as well as half of the stipend. When Hipshir told the Plaintiff she would no longer be the only teacher supervising the group, she stated they needed younger blood to run the society.

The Defendant argues that placing another teacher as the supervisor of the National Honor Society was not an adverse employment action. The Court disagrees. An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (citations omitted). The action typically "inflicts direct economic harm." *Id.* at 762. "An employment action must amount to a materially adverse change in the terms or conditions of employment to be actionable." *Freeman v. Potter*, 200 Fed. Appx. 439, 442 (6th Cir. 2006) (quotation omitted). A material issue exists whether the reduction of the Plaintiff's stipend amount was a materially adverse change in the terms of her employment.

Hipshir's statement that she would no longer run the society by herself because they "needed younger blood" is direct evidence of discrimination as to the decision to split the National Honor Society responsibilities. In *Blair v. Henry Filters*, 505 F.3d 517, 524 (6th Cir. 2007), the Sixth Circuit considered that a supervisor's statement that an individual "was getting too old for this" when he removed the individual from a certain account would represent direct evidence of discrimination

Case No. 1:07-cv-2403
Gwin, J.

for that action, though not for his later termination. *Id.* Similarly, the Court finds the principal's statement, made in the context of the adverse employment action, is direct evidence of discrimination. For that reason, the Court denies the Defendant's motion for summary judgment as it relates to the Plaintiff's modified work assignments claim.

2. Indirect Evidence

The Court evaluates indirect or circumstantial evidence under the *McDonnell Douglas* burden-shifting test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To prove a prima facie case of age discrimination under the *McDonnell Douglas* analysis, a plaintiff must show: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she "was either replaced by a substantially younger person, or was treated less favorably than a similarly situated employee from outside the protected class." *McElroy v. Philips Med. Sys. N.A., Inc.,* 127 Fed. Appx. 161, 166 (6th Cir. 2005). The Sixth Circuit has explained, "It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of [an employee outside the protected class], the plaintiff must show that the 'comparables' are similarly-situated in all respects." *Minadeo,* 398 F.3d at 764 (citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992)).

For the purpose of summary judgment, the Defendant has stipulated that the Plaintiff was over forty, that her termination was an adverse employment action, and that she was otherwise qualified for the position. The Defendant argues, however, that she was not treated differently than a similarly situated employee from outside the protected class. The Plaintiff argues that Sandra Hood, Sue Vickers Jones, and the fourth grade teacher at Ranchwood elementary are similarly situated employees who were treated differently. The Defendant responds that these other teachers did not

-7-

Case No. 1:07-cv-2403
Gwin, J.

assist the students in answering questions and were involved in more minor testing protocol violations.

The Court finds, however, that it cannot consider the evidence of these allegedly similarly situated employees. The Plaintiff sets forth in her deposition that she learned about two potential compators–Sandra Hood [1] and an unnamed Ranchwood Elementary teacher[2]–from chatting with other teachers. [Doc. 31, Ex. 4 at 60, 62]. The Plaintiff does not have personal knowledge of their cases, therefore she is not competent to testify about them. F.R.E. 601, 602. Rule 56(e) provides the Court may consider affidavits made on personal knowledge and that sets forth facts as would be admissible into evidence. Fed.R.Civ.Pro. 56(e). The Plaintiff's testimony about rumors she heard are not admissible evidence. Further, the Court finds that the other teachers' statements cannot be characterized as an admission by a party and therefore excluded from the hearsay rule. "[A] statement by a person authorized by the party to make a statement concerning the subject," would be an admission by a party opponent. F.R.E. 801(d)(2)(C). There is no evidence, however, that teachers talking amongst themselves regarding testing irregularities would have been authorized by the Mansfield School Board to make those statements.

---

[1] The Plaintiff asserts that she heard that Sandra Hood read portions of the Ohio Achievement Test aloud to the entire class that she was not supposed to read aloud, and she also answered some questions that she should not have answered. [Doc. 31, Ex. 4 at 58-60]. Hood apparently told another teacher that she had done this, who reported her to the principal and Betsy Alexander. [Doc. 31, Ex. 4 at 59]. The Ohio Department of Education investigated, but only told her not to do it again. [Doc. 31, Ex. 4 at 59-60]. The Department of Education did not invalidate the scores for students in Hood's class that year. [Doc. 31, Ex. 4 at 61].

[2] The Plaintiff also testified that a she heard that a fourth grade teacher at Ranchwood Elementary School, left the testing booklets unattended in a room with unattended students. [Doc. 31, Ex. 4 at 67]. She testified that this was a breach of the testing rules. [Doc. 31, Ex. 4 at 67]. The principal spoke with her but did not call in the Department of Education. [Doc. 31, Ex. 4 at 67]. The students testing scores remained valid. [Doc. 31, Ex. 4 at 67].

Case No. 1:07-cv-2403
Gwin, J.

The Plaintiff states she learned of another irregularity from the principal herself. It is unclear whether this statement could be characterized as an admission. The Court, however, finds it unnecessary to resolve the issue, as in any case, Jones was not similarly situated. The Plaintiff testified that Sue Vickers Jones, a teacher at Ranchwood Elementary School, gave the wrong test on the wrong day. [Doc. 31, Ex. 4 at 64]. When Jones was on a break, the teacher filling in for her discovered she had administered the wrong tests. [Doc. 31, Ex. 4 at 65]. The teachers retrieved the tests that Jones had wrongfully passed out and administered the correct test for that day. [Doc. 31, Ex. 4 at 65]. Jones received no discipline and the Department of Education did not invalidate the students' scores. [Doc. 31, Ex. 4 at 65].

To make a comparison between the Plaintiff's treatment and that of the other individuals, the Plaintiff must show that she is similarly situated to the other individuals in all relevant respects. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). In the discriminatory discipline context, the individuals with whom the plaintiff seeks to compare her treatment typically must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without differentiating circumstances. *Parries v. Makino, Inc.*, 122 Fed. Appx. 826, 830 (6th Cir. 2004). "Although the comparison need not involve identical misconduct, the misconduct must be of comparable seriousness." *Id.*

Jones did not engage in misconduct of comparable seriousness to the Plaintiff's misconduct. Jones inadvertently gave out the wrong test. She did not improperly answer any questions. The Ohio Department of Education investigated and found no reason to invalidate the test scores of Jones' students. Jones' misconduct was an instance of carelessness. The Plaintiff's misconduct, by contrast, cannot be characterized as inadvertent. She did not engage in conduct of comparable seriousness to

Case No. 1:07-cv-2403
Gwin, J.

the Plaintiff's misconduct. See *Parries*, 122 Fed. Appx. at 830.

For these reasons, the Court finds the Plaintiff cannot establish a prima facie case of age discrimination on her termination claim. She has failed to establish any similarly situated employees who were treated differently. Thus, the Court grants summary judgment on the termination claim.

*B. Intentional Infliction of Emotional Distress*

The Plaintiff also alleges the state law claim of intentional infliction of emotional distress. O.R.C. 2744.02(A)(1) provides political subdivisions immunity from liability in connection with its performance of a governmental or proprietary function. A school district qualifies as a political subdivision under OR.C. 2744.01(F); and the operation of a public school is a governmental function, as defined in O.R.C. 2744.01(C)(2)(c). While there are some narrow exceptions to this statutory immunity, the Plaintiff fails to point to any that would allow recovery in this case. As such, the Court grants the Defendant summary judgment on the state law claim.

### IV. Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** the Defendant's motion for summary judgment.

IT IS SO ORDERED.


Dated: May 27, 2008                               s/       *James S. Gwin*
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE